**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAJA VADAPALLY, *et al.*, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br>Defendants. | No. 24-cv-11536<br><br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is a motion to dismiss or transfer filed by defendants U.S. Department of Homeland Security ("DHS"); DHS Secretary Markwayne Mullin, in his official capacity; Acting Director of U.S. Immigration and Customs Enforcement ("ICE") Todd Lyons, in his official capacity; Director of U.S. Citizenship and Immigration Services ("USCIS") Joseph B. Edlow, in his official capacity; and the United States of America (collectively with DHS, Secretary Mullin, Acting Director Lyons, and Director Edlow, the "DHS Defendants").[1] ECF No. 17; *see* ECF No. 17-1 ("DHS Moving Br."). Defendants U.S. Department of State and U.S. Department of Education (collectively, the "Non-DHS Defendants") have also moved to dismiss. ECF No. 16; *see* ECF No. 16-1 ("DOS & DOE Moving Br."). Plaintiffs Raja Vadapally, Swetha Bachu, Prudhivi Raj Gundabathula, and Rajasekhar Reddy Pasam (collectively, "Plaintiffs") opposed the motions, *see* ECF No. 24 ("Opp'n to DHS Br."); ECF No. 25, and defendants replied, *see* ECF No. 31; ECF No. 35 ("DHS Reply Br."). The Court proceeds without oral argument. Fed. R. Civ.

---

[1] Under Federal Rule of Civil Procedure 25, a public officer's "successor is automatically substituted as a party." Fed. R. Civ. P. 25(d).

P. 78(b); L. Civ. R. 78.1(b).  For the reasons stated below, the Court will transfer this case to the U.S. District Court for the Eastern District of Michigan.

I.      **BACKGROUND**

This putative class action stems from Plaintiffs' enrollment at the University of Farmington ("UF"), which ostensibly offered students the opportunity to "continue their practical education" through "graduate programs" in "the heart of the automotive and advanced manufacturing center of Southeast Michigan."  ECF No. 1 ("Compl.") ¶¶ 4, 9.  According to Plaintiffs, UF (which was located in Farmington Hills, Michigan) was accredited by the Michigan Department of Licensing and Regulatory Affairs and the Accrediting Commission of Career Schools and Colleges, had DHS approval "for participation in the [F-1] student-visa program," and made "multiple appeals to international students."  *Id.* ¶¶ 3, 7–9, 105.  Further, UF maintained a "web presence," including an ".edu" website which allegedly showed "pictures of the school and its students" and cataloged UF's degree and course offerings.  *Id.* ¶¶ 9, 28, 39, 105.

Around 2017 or 2018, Plaintiffs, all of whom sought to "further their education in the United States," enrolled in master's programs at UF.  *Id.* ¶¶ 3, 27, 38, 50, 60.  However, "[u]nbeknownst to Plaintiffs," UF was not a legitimate institution of higher education.  *Id.* ¶¶ 5–6.  Instead, UF was part of DHS's "Operation Paper Chase," DHS Reply Br. at 4, "an elaborate sting operation" run out of the Homeland Security Investigations ("HSI") Office in Detroit that sought to "investigate and prosecute academic brokers and recruiters who [DHS] believed were likely to commit visa fraud," Compl. ¶¶ 5–6; *see* DHS Moving Br. at 2–3; *see also* Compl. ¶ 103 ("These brokers steer students to enroll in schools whose principal objective is . . . to enrich their proprietors through substantial fees and tuition while offering students no meaningful educational opportunities.").  According to Plaintiffs, after ICE shut down UF in January 2019, the

2

Government abruptly terminated Plaintiffs' student F-1 visa status and placed many UF students in removal proceedings.  Compl. ¶¶ 1–2, 15, 109, 111; *see also Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 175 (3d Cir. 2019) (noting that the F-1 visa program allows non-citizen students to "reside in the United States while enrolled at Government-approved schools").

Plaintiffs filed a putative class action complaint, which asserts three claims for relief.  First, Plaintiffs bring a Fifth Amendment Due Process claim against the DHS Defendants.  Compl. ¶¶ 134–40.  Second, Plaintiffs bring an Administrative Procedure Act ("APA") claim against the DHS Defendants.  *Id.* ¶¶ 141–54.  And third, Plaintiffs bring an equitable estoppel claim against all defendants.  *Id.* ¶¶ 155–58.

The DHS Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or to transfer the case to the Eastern District of Michigan under 28 U.S.C. § 1404(a).  DHS Moving Br. at 11–28.  The Non-DHS Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6).  DOS & DOE Moving Br. at 6–17.  The Court now turns to the motion to transfer.

## II.     LEGAL STANDARD

In assessing a motion to transfer under 28 U.S.C. § 1404(a), a district court conducts a "two-step analysis."  *Care One, LLC v. Nat'l Lab. Rels. Bd.*, 680 F. Supp. 3d 540, 544 (D.N.J. 2023).  "First, the [c]ourt determines whether the requested transferee venue is one where the action 'might have been brought.'" *Id.* (citation omitted).  This inquiry turns on whether venue is proper in the transferee district and whether the transferee court has personal jurisdiction "over all of the defendants."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).  Second, if the transferee venue is one where the action might have been brought, the court must determine "whether on balance the litigation would more conveniently proceed and the interests of justice be

3

better served by transfer to [the transferee district]." *Care One*, 680 F. Supp. 3d at 544. (citation omitted).

During the second step, a district court must evaluate both the convenience of the parties and various public interest considerations. *Def. Distributed v. Att'y Gen. of N.J.*, 167 F.4th 65, 75 (3d Cir. 2026). To properly conduct this inquiry, a district court must balance a prescribed set of private and public interest factors, though the balancing of these factors is in the district court's discretion. *Id.* (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" (citation omitted)).

"The private interest factors to be considered include: (1) the plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses—'but only to the extent that the witnesses may actually be unavailable for trial in one of the fora,' (6) the location of books and records, and (7) 'practical problems that make trial of a case easy, expeditious, and inexpensive.'" *Byrne v. Terex USA, LLC*, 807 F. Supp. 3d 476, 480 (E.D. Pa. 2025) (citation omitted). And "[t]he public interest factors include: (1) the judgment's enforceability, (2) the relative administrative difficulty in the two fora resulting from court congestion, (3) the local interest in deciding local controversies at home, (4) the public policies of the fora, (5) the trial judge's familiarity with the applicable state law in diversity cases, and (6) judicial economy." *Id.* at 481. The § 1404(a) movant "bear[s] the burden of demonstrating the need for transfer." *Def. Distributed*, 167 F.4th at 75.

## III.   **DISCUSSION**

As explained below, the Court will grant the DHS Defendants' request to transfer this case to the Eastern District of Michigan and will defer "the merits of the motion[s] to dismiss" to the transferee court.[2] *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 19-7223, 2020 WL 1922635, at *2 (N.D. Cal. Apr. 21, 2020), *aff'd*, 34 F.4th 1334 (Fed. Cir. 2022); *see Holovchak v. Cuccinelli*, No. 20-210, 2020 WL 4530665, at *5 (E.D. Pa. Aug. 6, 2020) ("Because we find that transfer is warranted, we decline to review Defendants' other arguments in their Motion as to the viability of Plaintiffs' claims."); *Gianakis v. Hilton Tucson El Conquistador Golf & Tennis Resort*, No. 12-4268, 2012 WL 5250463, at *1, *4 (D.N.J. Oct. 22, 2012) (granting in part a motion to "dismiss and transfer venue," transferring the case under § 1404(a), and "declin[ing] to decide any other issues presented in the motion to dismiss, which should be decided by the transferee court").

---

[2] The Court recognizes that the DHS and Non-DHS Defendants both seek dismissal of certain claims for lack of subject-matter jurisdiction under Rule 12(b)(1). However, "[t]he Third Circuit has recognized that 'district courts have discretion to address convenience-based venue issues in the first instance and that they should suspend concerns about other threshold issues while doing so.'" *Sturman v. HIPR Pacsoft Techs., Inc.*, No. 22-995, 2023 WL 2948769, at *3 (W.D. Pa. Jan. 31, 2023) (quoting *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018)), *report and recommendation adopted sub nom. Sturman v. HIPR Pacsoft Techs., Inc., Hudson*, No. 22-995, 2023 WL 2948768 (W.D. Pa. Jan. 31, 2023); *see also GB Grp., LLC v. Am. Transp. Grp. Ins. Risk Retention Grp.*, Inc., No. 21-3163, 2022 WL 20099260, at *2 (E.D. Pa. Nov. 28, 2022) ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007))). Indeed, "venue disputes involve only a threshold determination 'that the merits should [or should not] be adjudicated elsewhere.'" *Reading*, 900 F.3d at 95 (alteration in original) (citation omitted); *see In re LimitNone, LLC*, 551 F.3d 572, 576 (7th Cir. 2008) ("[T]he district court was not required to determine its own subject-matter jurisdiction before ordering the case transferred. . . . [T]he Supreme Court has consistently held that 'there is no mandatory sequencing of jurisdictional issues.'" (quoting *Sinochem*, 549 U.S. at 431)). They are *not* merits issues for which subject-matter jurisdiction is necessarily required. *Reading*, 900 F.3d at 95 (noting that reaching a venue dispute "does not entail any assumption by the court of substantive law-declaring power" (citation omitted)).

**A.     Whether This Action Could Have Been Brought in the Eastern District of Michigan**

The Court must first determine whether the transferee district is one in which Plaintiffs could have commenced the action.  28 U.S.C. § 1404(a).  The Court finds that Plaintiffs could have commenced the action in the Eastern District of Michigan.  To begin, the Eastern District of Michigan can exercise personal jurisdiction over defendants.  *See, e.g.*, *Suri v. Trump*, 785 F. Supp. 3d 128, 141 n.7 (E.D. Va. 2025) (noting that the court could "exercise *in personam jurisdiction* over the Secretary of Homeland Security because she regularly transacts business in this district"); *Burton v. United States*, 668 F. Supp. 2d 86, 93 (D.D.C. 2009) ("Where the United States is the defendant, [traditional notions of fair play and substantial justice] are not offended so long as the United States is properly served with notice of suit.").  Plaintiffs do not appear to dispute this point and instead argue that transfer is improper because venue does not lie in the Eastern District of Michigan.  Opp'n to DHS Br. at 39.  The Court disagrees.

The provision governing venue for actions where a defendant is an officer or employee of the United States provides that venue is proper "in any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(e)(1)(B); *see also Ngonga v. Sessions*, 318 F. Supp. 3d 270, 274 (D.D.C. 2018).  It is beyond doubt that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Michigan.  UF was part of a sting operation run by HSI's Detroit office.  DHS Reply Br. at 6, 9; *see id.* at 2 ("[T]he records prove that virtually every aspect of Operation Paper Chase, including its inception and conclusion, occurred in Michigan.  In December 2014, the Office of the Special Agent in Charge located in Detroit, Michigan for HSI . . . received concurrence from the U.S. Attorney's Office for the Eastern District of Michigan to begin Operation Paper Chase, an undercover operation establishing a fictious university located in Farmington Hills,

Michigan."); *see also United States v. Johnson*, No. 13-CR-20764, 2021 WL 3743163, at *1 (E.D. Mich. Aug. 24, 2021) (noting that Detroit is located in Michigan's Eastern District). Indeed, law enforcement records show that HSI Detroit and the Office of the U.S. Attorney for the Eastern District of Michigan were both heavily involved in the sting operation. *See generally* ECF No. 36; *see also, e.g.*, *United States v. Sama*, No. 19-CR-20026, 2020 WL 4474144, at *1 (E.D. Mich. Aug. 4, 2020) ("[Defendant] attended and personally recruited over 100 students to attend [UF], which was an undercover university run by U.S. Department of Homeland Security Agents."); *United States v. Nune*, No. 19-MC-51643, 2019 WL 6522239, at *1 (E.D. Mich. Dec. 4, 2019) ("The instant action stems from a federal law enforcement operation, where undercover agents from Homeland Security Investigations . . . posed as owners and employees of [UF]. . . , which was located in Farmington Hills, Michigan").

Moreover, UF was ostensibly located in Farmington Hills, ECF No. 1-2, with a "'campus' located within a commercial building" in the city. ECF No. 35-1, Declaration of Stephen Webber ("Webber Decl."), ¶ 9; *see also* ECF No. 36 at 214 ("The undercover university is a brick and mortar location which requires regular and recurring expenses involving building rent, utilities, lease vehicles and maintaining technical surveillance equipment."); *Summit Training Source, Inc. v. Mastery Techs., Inc.*, No. 00-127, 2000 WL 35442327, at *1 (W.D. Mich. June 1, 2000) (noting that Farmington Hills is located in Michigan's Eastern District). At least one named Plaintiff travelled to "the [UF] campus to confirm that it was legitimate," Compl. ¶ 56, and others communicated with a government official posing as UF's director of admissions, *see, e.g.*, *id.* ¶¶ 10, 30, 41, 55; ECF No. 1-2 at 2. In addition, once they enrolled at UF, Plaintiffs allege that they planned to take classes through the university and "repeatedly reached out to [UF] staff" for "information about how to take classes." Compl. ¶ 13. Accordingly, the Court finds that venue is

7

proper in the Eastern District of Michigan, because a "substantial part of the events or omissions giving rise to [Plaintiffs'] claim[s] occurred" there.  28 U.S.C. § 1391(e)(1)(B).

### B.      Whether Transfer Would Serve Convenience and the Interests of Justice

Since this action could have been brought in the Eastern District of Michigan, the Court must decide whether transfer is appropriate.  As discussed below, the Court will transfer the case, because the private and public interest factors, on balance, favor transfer.

### 1.      The Private Interest Factors

The Court finds that the private interest factors support transfer.  First, the claims in this case arose in Michigan, not New Jersey.  *Byrne*, 807 F. Supp. 3d at 480; *see also Aetna Inc. v. Peoples Choice Hosp., LLC*, No. 17-4354, 2018 WL 1287491, at *3 (E.D. Pa. Mar. 13, 2018) ("The most important factor for this Court's decision is where the claims arose."); *Janosko v. United of Omaha Life Ins. Co.*, No. 16-1137, 2016 WL 4009818, at *3 (D.N.J. July 25, 2016).  As noted above, UF touted itself as a university "[l]ocated in the heart of the automotive and advanced manufacturing center of Southeast Michigan," and Plaintiffs allege that they applied to, received acceptance letters from, enrolled at, and expected to take classes at UF.  Compl. ¶¶ 9, 27–73.  They also allege that they communicated with officials posing as UF administrators.  *Id.*; *see also* Webber Decl. ¶¶ 8–10; ECF No. 36.  One Plaintiff even alleges that he travelled to UF to "confirm that it was legitimate."  Compl. ¶ 56.  Moreover, UF was part of Operation Paper Chase, an "undercover operation [that] occurred exclusively in Michigan" and was "run by undercover agents based out of the HSI . . . Office [in Michigan] who rented office space in [the Eastern District of] Michigan to set up a school recognized by the Michigan Department of Education." DHS Moving Br. at 3, 22; *see also* DHS Reply Br. at 2–4.  The Office of the U.S. Attorney for the Eastern District of Michigan was also involved in the operation and subsequently prosecuted

individuals who recruited foreign students to enroll in UF.  *See, e.g.*, *Sama*, 2020 WL 4474144, at *1; *Nune*, 2019 WL 6522239, at *1.  In sum, because much of the "factual predicate" of this suit occurred in the Eastern District of Michigan, this factor strongly favors transfer.  *Ngonga*, 318 F. Supp. 3d. at 275; *see also Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 331–32 (2020).

Nevertheless, Plaintiffs argue that their claims arose in Washington, D.C., because (1) of periodic involvement from HSI's "Executive Associate Director," who works in Washington, and (2) Plaintiffs received notices regarding their terminated F-1 status from a government address in Washington.  Opp'n to DHS Br. at 43.  However, these assertions do not undermine HSI Detroit's critical, granular role in Operation Paper Chase.  As the DHS Defendants state, "HSI headquarters' periodic reauthorization of HSI Detroit's undercover efforts show that HSI Detroit created, led, and executed Operation Paper Chase from its inception through the January 2019 enforcement efforts, making Michigan the focal point of all decisions despite periodic Washington based approvals."  DHS Reply Br. at 6–7; Webber Decl. ¶¶ 8–27; ECF No. 36; *see, e.g.*, *W. Watersheds Project v. Vilsack*, No. 21-3056, 2022 WL 22744938, at *5 (D.D.C. Sept. 20, 2022) ("But 'any role played by officials in the District of Columbia is overshadowed by the fact that their decisions were based on work done by government employees' in Wyoming." (citation omitted)); *Union Neighbors United, Inc. v. Jewell*, No. 13-1435, 2014 WL 12803803, at *2 (D.D.C. Feb. 11, 2014) ("Defendants argue that the claim arose in Ohio because 'the Ohio [FWS] Field Office was responsible for the majority of the development, analysis, and preparation of the challenged decisions,' including the Environmental Impact Statement and the Biological Opinion. . . .  Defendants are thus more persuasive in showing that the claim did not arise in the District of Columbia than that it affirmatively did arise in Ohio."); *see also Ngonga*, 318 F. Supp. 3d. at 275–76 ("To the extent that Plaintiffs seek to establish a nexus between their claim and this

District by naming high-ranking government officers as Defendants, the Court remains wary that 'a plaintiff might manufacture venue in the District of Columbia [b]y naming high government officials as defendants.'" (alteration in original) (citation omitted)).

Second, defendants' preference favors transfer. *Byrne*, 807 F. Supp. 3d at 480. The DHS Defendants have made clear that they prefer to litigate this case in Michigan.[3] DHS Moving Br. at 21; DHS Reply Br. at 8.

Third, transferring this case to Michigan would serve the convenience of the witnesses and facilitate ease of access to evidence, though these factors do not weigh heavily in the Court's analysis. *Byrne*, 807 F. Supp. 3d at 480. As noted above, the government officials involved in Operation Paper Chase work in Michigan. *See* DHS Moving Br. at 23; DHS Reply Br. at 9 ("HSI Detroit created Operation Paper Chase to investigate potential immigration fraud in that region, HSI Detroit ran the operation with local undercover agents . . . ."); ECF No. 36. Thus, many of the Government's witnesses are in Michigan. *See* DHS Moving Br. at 23. On the other hand, many of Plaintiffs' witnesses (*e.g.*, the named Plaintiffs other than Mr. Vadapally) "live in India," so a transfer to the Eastern District of Michigan would have little effect on their ability to provide testimony. Opp'n to DHS Br. at 51–52. In addition, to the extent there are relevant books and records (*e.g.*, records related to HSI's rental of office space as a part of Operation Paper Chase, *see* DHS Moving Br. at 22), those too would be located in Michigan. That said, Third Circuit law directs courts to consider the convenience of the witnesses and the location of books and records only to the extent that witnesses or evidence will be unavailable in one of the fora. *See Paycom Software, Inc. v. Travelers Casulty & Sur. Co. of Am.*, No. 21-1403, 2022 WL 1063845, at *4 (D.

---

[3] The Non-DHS Defendants do not address transfer.

Del. Apr. 8, 2022) (citing *Jumara*, 55 F.3d at 879). Because the parties have not shown any inaccessibility issues in either fora, these factors are neutral.

Fourth, although Plaintiffs prefer to litigate in New Jersey, their preference is entitled to minimal deference. Compl.; Opp'n to DHS Br. at 49. "Generally, a plaintiff's choice of forum is given great weight in an analysis under [§] 1404(a)." *Allied Old Eng., Inc. v. Uwajimaya, Inc.*, No. 11-1239, 2012 WL 3564172, at *3 (D.N.J. Aug. 16, 2012). However, this deference is "not always warranted where the plaintiff's choice of forum has no meaningful ties to the controversy, and where transfer is sought to a forum . . . where the subject matter of the lawsuit is connected." *Ngonga*, 318 F. Supp. 3d at 275 (citation omitted); *see also Kalawa v. United States*, No. 19-16089, 2020 WL 3603205, at *4 (D.N.J. Jul. 2, 2020) (noting that deference to a plaintiff's chosen forum "is curbed" where the "forum 'has little connection with the operative facts of the lawsuit'" (citation omitted)); *Janosko*, 2016 WL 4009818, at *3 (similar). As explained herein, with the exception of Mr. Vadapally's residence, New Jersey lacks "meaningful ties" to this litigation. *Ngonga*, 318 F. Supp. 3d at 275 (citation omitted). For three of the four named plaintiffs, they have not just sued "outside [their] home forum"; they have sued in a forum that has little (if any) connection to this case. *Vanda Pharms., Inc. v. Teva Pharms., Inc.*, No. 23-511, 2023 WL 8890322, at *5 (D.N.J. Dec. 26, 2023) (noting that "[t]here is ample case law in this District that holds the deference afforded to a plaintiff's choice of forum is lessened when the plaintiff commences suit outside its home forum"); *see* Opp'n to DHS Br. at 51 . Moreover, where, as here, a set of plaintiffs "'sue[] representatively on behalf of a class,' the plaintiff[s'] choice of forum becomes 'substantially less important' because 'the named plaintiffs['] testimony and other input is likely to be minimal.'" *Purcell v. Chubb Ltd.*, No. 23-122, 2023 WL 5434418, at *4 (D.N.J. Aug. 23, 2023) (citation omitted). As such, Plaintiffs' choice of forum receives minimal deference.

11

Fifth, the convenience of the parties as indicated by their relative physical and financial conditions may weigh against transfer. *Byrne*, 807 F. Supp. 3d at 480. Defendants are departments, agencies, or officials of the federal government. *See Coyoy v. United States*, 526 F. Supp. 3d 30, 33 (D.N.J. 2021) ("The United States is obviously present and well able to defend itself in any district."); *Raju v. Cuccinelli*, No. 20-1386, 2020 WL 4915773, at *4 (N.D. Cal. Aug. 14, 2020) ("[E]ven if litigating in the District of Columbia would be more convenient for USCIS, the agency is well equipped to litigate elsewhere, including here."). Plaintiffs, on the other hand, are individuals. However, with the exception of Mr. Vadapally, Plaintiffs live in India. *See* Opp'n to DHS Br. at 51. So, for all Plaintiffs except for Mr. Vadapally, litigating in New Jersey is not meaningfully different from litigating in the Eastern District of Michigan. Thus, this factor weighs against transfer, though only slightly.

Sixth, the Court does not see any other "practical problems" related to the ease, expeditiousness, or expense of trial relevant here. *Byrne*, 807 F. Supp. 3d at 480 (citation omitted).

### 2.    The Public Interest Factors

The Court finds that the public interest factors likewise favor transfer. First, the factor concerning the interest in deciding local controversies at home—"perhaps [the] most important amongst the public factors"—supports transfer. *Wolfram Alpha*, 490 F. Supp. 3d at 338; *see Byrne*, 807 F. Supp. 3d at 481. "Controversies should be resolved in the locale where they arise." *Ngonga*, 318 F. Supp. 3d at 276 (citation omitted). As explained above, a substantial portion of the acts giving rise to this case occurred in the Eastern District of Michigan, so the people of the Eastern District of Michigan have an interest in having the case proceed there. *See Williamson v. U.S. Embassy*, No. 11-4966, 2012 WL 1657961, at *3 (E.D. Pa. May 11, 2012). Conversely, beyond Mr. Vadpally's residency in the State, Compl. ¶ 27, New Jersey's interest in this litigation

12

is minimal, *see Gianakis*, 2012 WL 5250463, at \*4 (finding that "the public factors weigh[ed] decidedly in favor of transfer" and transferring under § 1404(a) where "[t]he only significant connection New Jersey ha[d] to th[e] case [was] Plaintiff's status as a New Jersey resident"). As such, although the Court notes that this case does not present a truly local controversy, as the putative class (including Plaintiffs) are scattered across the country and the world, *see* Opp'n to DHS Br. at 54–55, the interest in deciding local controversies at home factor weighs in favor of transfer.[4]

Second, as to the factor concerning administrative difficulty resulting from court congestion, the Court recognizes the DHS Defendants' argument that a "caseload comparison" between this District and the Eastern District of Michigan weighs in favor of transfer. DHS Moving Br. at 27. "The District of New Jersey has a significantly heftier caseload than the Eastern District of Michigan." *Halpern v. Centroid Sys., Inc.*, No. 24-7037, 2024 WL 4533370, at \*10 (D.N.J. Oct. 21, 2024). Nonetheless, the "administrative difficulty resulting from court congestion" factor tends "neutral because either venue could competently adjudicate this matter." *Montenero v. Marriot Hotel Servs., LLC*, No. 24-4226, 2024 WL 4524323, at \*5 (D.N.J. Oct. 17, 2024); *see also Caduceus, Inc. v. Univ. Physician Grp.*, No. 23-3415, 2024 WL 3319405, at \*4 (D.N.J. July 3, 2024) (observing that "the District of New Jersey has a much heavier caseload per-judge than the Eastern District of Michigan" but noting that "the 'relative congestion of the respective courts' dockets is not [always] a factor of great importance on a motion to transfer'"

---

[4] Plaintiffs claim that New Jersey's interest stems from their allegations that 40 to 50 former UF students were detained at Delaney Hall in Elizabeth, New Jersey. *See* Opp'n to DHS Br. at 54 (citing Compl. ¶ 34). Even accepting those allegations as true, that does not convince the Court that New Jersey has any unique interest. Indeed, Plaintiffs recognize that the issues in this litigation are "national in scope" and do not attempt to explain why New Jersey has an *outsized* interest in this litigation. *Id.* at 55.

(alteration in original) (citation omitted)).  As such, the Court finds that this factor either weighs in favor of transfer or is neutral.

Third, the factors related to the enforceability of the judgment, the public policies of the fora, and the trial judge's familiarity with the applicable law are neutral.  *Keesler v. Tractor Supply Co.*, No. 24-1612, 2025 WL 1770503, at *6 (M.D. Pa. June 26, 2025) ("[C]ourts throughout this Circuit routinely acknowledge that 'factors such as the enforceability of the judgment, public policies, and the familiarity of the trial judge with the applicable law are neutral [] because the causes of action at issue arise under federal law.'" (alteration in original) (citation omitted)).  Because (1) the defendants here are departments, agencies, or officers of the federal government and (2) Plaintiffs' claims arise under federal law, Plaintiffs will have no issue enforcing the judgment in either district.  *See Gulden v. Exxon Mobil Corp.*, No. 24-7381, 2025 WL 1549313, at *10 (D.N.J. May 30, 2025); *Roberson v. U.S. Dep't of Veteran Affs.*, No. 20-2252, 2021 WL 5867656, at *4 (M.D. Pa. Oct. 25, 2021) ("There is no basis to think, and neither party has argued, that a judgment against the United States could not be enforced either in this district or in the Northern District of Georgia."), *report and recommendation adopted sub nom. Roberson v. U.S. Dep't of Veterans Affs.*, No. 20-2252, 2021 WL 6331975 (M.D. Pa. Dec. 23, 2021).  Similarly, since this is a federal law action, the factors related to the public policies of the fora and the transferee court's knowledge of the applicable law are not significant to the Court's inquiry.  *See Gulden*, 2025 WL 1549313, at *10; *Dariz v. Republic Airline Inc.*, 377 F. Supp. 3d 499, 504 (E.D. Pa. 2019); *Gonce v. Prudential Ins. Co. of Am.*, No. 18-8662, 2018 WL 5631170, at *4 (D.N.J. Oct. 31, 2018) ("[B]ecause this is a federal law action, the public policies of the fora and the familiarity of the trial judge with [the applicable] law do not figure into the Court's analysis.").

14

Fourth, the Court sees no judicial economy considerations relevant here, so that factor too is neutral.  *Byrne*, 807 F. Supp. 3d at 481.

*       *       *

After considering the relevant private and public interest factors, the Court finds that transfer would substantially advance both "the convenience of parties and witnesses" and "the interest of justice."  28 U.S.C. § 1404(a); *see Byrne*, 807 F. Supp. 3d at 480–81.  As such, the Court will transfer the case to the Eastern District of Michigan.

## IV.    CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 29th day of May 2026;

**ORDERED** that the DHS Defendants' motion to dismiss or transfer (ECF No. 17) is **GRANTED** to the extent that it seeks transfer of venue; and it is further

**ORDERED** that this action is hereby transferred to the U.S. District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a); and it is further

**ORDERED** that having transferred this matter, the Court declines to address the remaining portions of the DHS Defendants' motion to dismiss (ECF No. 17) or the Non-DHS Defendants' motion to dismiss (ECF No. 16), which remain for the transferee court; and it is finally

**ORDERED** that the Office of the Clerk of the Court shall close this case.

**SO ORDERED**.

*/s/ Claire C. Cecchi*<br>**CLAIRE C. CECCHI, U.S.D.J.**